UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YENI CASTILLO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ABM INDUSTRIES, INC., *et al.*,<br><br>　　　　Defendants. | Case No. 5:17-cv-01889-AB (KKx)<br><br>**ORDER DENYING MOTION TO REMAND** |

Before the Court is the Motion to Remand filed by Plaintiff Yeni Castillo ("Plaintiff"). Dkt. No. 12. Defendants ABM Industries Incorporated and ABM Onsite Services, Inc. (collectively, "Defendants") filed an opposition, and Plaintiff filed a reply. The Court heard oral arguments regarding the Motion on November 17, 2017. For the following reasons, the Court **DENIES** the Motion.

**I.　BACKGROUND**

On July 19, 2017, Plaintiff filed a First Amended Complaint ("FAC") against Defendants and Claudia Alarcon. Dkt. No. 1-8. Plaintiff is a California resident. FAC, ¶ 2. Defendant ABM Industries Incorporated is a corporation incorporated in the State of Delaware and residing in the State of New York. Notice of Removal, ¶ 3 (Dkt. No. 1). Defendant ABM Onsite Services, Inc. is a corporation incorporated in the State of Delaware and residing in the State of Texas. *Id.* Ms. Alarcon resides in

California. FAC, ¶ 5. On August 17, 2017, Plaintiff dismissed her claims against Ms. Alarcon. Dkt. No. 1-10.

Through the FAC, Plaintiff alleges that she spent 14 years working as a cleaner for the Inland Empire Health Plan. FAC, ¶¶ 18-19. Defendants took over the Inland Empire Health Plan facility around 2010. *Id*., ¶ 20. In April 2016, Plaintiff sustained an injury at work. *Id*., ¶ 23. After being placed on disability leave, Plaintiff resumed working for Defendants in May 2016. *Id*., ¶¶ 24, 25. Instead of working as a cleaner, Plaintiff performed office work full time. *Id*., ¶ 26. But in January 2017, Defendants informed Plaintiff that she would not be able to continue doing office work. *Id*., ¶¶ 28-29. Plaintiff claims she attempted to return to work, but Defendants failed to meet with her to determine which jobs she would be able to perform given her disability. *Id*., ¶¶ 34-36. Based on these allegations, Plaintiff asserts causes of action under the California Fair Housing and Employment Act ("FEHA"), wrongful termination, and intentional infliction of emotional distress.

On July 10, 2017, Plaintiff's counsel sent Defendants' counsel a settlement demand of $280,000. Decl. Robert Matsuishi, ¶ 3, Ex. A (Dkt. No. 4-1). Plaintiff's counsel attached two jury verdicts to the settlement demand, claiming they came from cases "with very similar facts to [Plaintiff's] case." *Id*.

Defendants removed the case to this Court on September 15, 2017. *See* Notice of Removal. Defendants assert that the Court has diversity jurisdiction over the case because the parties are completely diverse and the amount in controversy exceeds $75,000. *Id*., ¶ 6. Plaintiff argues that Defendants cannot satisfy the amount in controversy requirement and moves for remand to state court. *See* Mot., at p. 1.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and thus have subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Bender v. Williamsport Area School Dist*., 475 U.S. 534, 541 (1986). "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal,"

statutes conferring jurisdiction are "strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citations and quotations omitted). There is a strong presumption that the Court is without jurisdiction until affirmatively proven otherwise. *See Fifty Assocs. v. Prudential Ins. Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970). When an action is removed from state court, the removing party bears the burden of demonstrating that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Federal diversity jurisdiction exists when the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the diversity and amount in controversy requirements are satisfied and if none of the defendants are citizens of the forum state.

The amount in controversy, for purposes of diversity jurisdiction, is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). "[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566. And while "'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' . . . '[e]vidence establishing the amount is required'" when "defendant's assertion of the amount in controversy is contested by plaintiffs." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin*

*Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). The defendant must establish the amount in controversy by the preponderance of the evidence. *See Dart*, 135 S. Ct. at 553-54.

**III. DISCUSSION**

The parties do not dispute that complete diversity exists between Plaintiff and Defendants. Subject matter jurisdction therefore depends on whether the amount in controversy exceeds $75,000.

Defendants attempt to establish the amount in controversy in two ways. First, they rely on Plaintiff's initial settlement offer of $280,000 and argue that it represents a reasonable estimate of Plaintiff's claims. Second, they claim Plaintiff's potential economic damages, attorneys' fees, non-economic compensatory damages, and punitive damages combine to establish that the amount in controversy exceeds $75,000.

**A. Settlement Demand**

A defendant can use a plaintiff's settlement demand to establish the amount in controversy "if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). However, when a plaintiff disavows a settlement offer, it does not evidence the amount in controversy. *See id.* (explaining that the plaintiff "could have argued that the demand was inflated and not an honest assessment of damages," but he did not "disavow" the demand); *Aguilar v. Wells Fargo Bank, N.A.*, No. ED-CV-15-01833-AB (SPx), 2015 WL 6755199, at *4 (C.D. Cal. Nov. 4, 2015) ("Because Plaintiff has expressly denied that her settlement offer accurately assesses the value of her claims, the offer does not constitute valid evidence of the amount in controversy.").

While Plaintiff initially demanded $280,000 to settle her claims, she has disavowed the demand. In her Motion, she explains that the settlement demand constituted "puffing and posturing," and that it did not reflect a reasonable estimate of her claims. Mot., at pp. 5, 6. Because Plaintiff has disavowed her settlement demand,

it does not establish the amount in controversy.

## B. Calculation of the Amount in Controversy

Without being able to rely on the settlement demand, Defendants must show by the preponderance of the evidence that the total amount in controversy exceeds $75,000. *Dart*, 135 S. Ct. at 553-54. In order to do so, Defendants add Plaintiff's economic damages, attorneys' fees, non-economic compensatory damages, and punitive damages.

### 1. Economic Damages

The proper measure of economic damages for purposes of removal jurisdiction is the amount of economic damages the plaintiff had incurred at the time of removal. *See Sasso v. Noble Utah Long Beach, LLC*, No. 14-cv-09154-AB (AJWx), 2015 WL 898468, at *4 (C.D. Cal. Mar. 3, 2015) (collecting cases and recognizing that "the weight of authority" holds that economic damages are to be calculated at the time of removal); *Fortescue v. Ecolab Inc.*, No. 14-cv-0253-FMO (RZx), 2014 WL 296755, at *2 (C.D. Cal. Jan. 28, 2014) ("[T]he court declines to project lost wages forward to some hypothetical trial date."). Plaintiff claims, and Defendants do not dispute, that Plaintiff had incurred about $15,180 in economic damages at the time of removal. Decl. Zoe Ahearn, ¶ 4 (Dkt. No. 12-1).

### 2. Attorneys' Fees

"[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). While there is a split of authority about whether post-removal attorneys' fees should be included in the amount in controversy, recent cases in this district hold that post-removal attorneys' fees should be included. *See, e.g.*, *Guytan v. Swift Transp. Co. of Arizona, LLC*, No. 17-cv-00626-VAP (DTBx), 2017 WL 2380159, at *3 (C.D. Cal. June 1, 2017). This Court has determined that "'an appropriate and conservative estimate' for attorneys' fees in employment cases in this district 'may reasonably be

expected to equal at least $30,000.'" *Id.* (citing *Sasso*, 2015 WL 898468, at *6); *see also Ponce v. Med. Eyeglass Ctr., Inc.*, No. 2:15-cv-04035-CAS (JEMx), 2015 WL 4554336, at *4 (C.D. Cal. July 27, 2015) (estimating $30,000 of attorneys' fees in an employment case); *Aguilar*, 2015 WL 6755199, at *7 (same).

Plaintiff requests attorneys' fees, which may be granted to the prevailing party in FEHA lawsuits. Cal. Gov't Code § 12965. Because the Court assumes at this stage that Plaintiff will prevail on her claims, attorneys' fees should be included in the amount in controversy. The Court therefore adheres to the decisions in other employment cases in this district and includes $30,000 of attorneys' fees in the amount in controversy.

### 3. Non-Economic Compensatory Damages

Non-economic compensatory damages, such as emotional distress damages, may be included in the amount in controversy calculation. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006). When a complaint does not allege a particular amount of non-economic damages, a defendant can analogize to awards given in similar cases. *See id.* (affirming the district court's determination that emotional distress damages would amount to at least $25,000 based on awards in similar age discrimination cases). Such cases must be factually analogous, but they need not be identical. *Compare Aguilar*, 2015 WL 6755199, at *6 (finding that racial discrimination cases cited by the defendant were not sufficiently analogous to the plaintiff's allegations to establish the amount of emotional distress damages in controversy) *to Castle v. Lab. Corp. of Am.*, No. 17-cv-02295-BRO (PLAx), 2017 WL 2111591, at *4 (C.D. Cal. May 15, 2017) (citing analogous, but not identical, cases to establish that emotional distress damages of at least $25,000 could result from a plaintiff's verdict).

Defendants first cite the damages award in *Huerta v. Pacsetter, Inc.*, JVR No. 1510060043, 2015 WL 5830070 (Cal. Super. Aug. 20, 2015). There, the plaintiff had worked for the defendant for years before developing carpal tunnel syndrome. She

6.

asked for an accommodation for her injury, and the defendant provided tasks that the plaintiff could perform. But after providing those accommodations for five years, the defendant began requiring the plaintiff to again perform tasks that aggravated her carpal tunnel injury. When the plaintiff could not execute those tasks, the defendant claimed the plaintiff could not perform her essential job functions. A jury found that the defendant engaged in disability discrimination, failed to provide reasonable accommodations, failed to engage in the interactive process, and maintained a hostile work environment. Among other damages, the jury awarded $25,000 in non-economic compensatory damages.

Plaintiff's allegations are analogous to the facts of the *Huerta* case. Like the plaintiff in *Huerta*, Plaintiff sustained a job-related injury that prevented her from performing her typical job duties. And, also like in *Huerta*, Defendants accommodated her injury for a period of time before revoking the accommodations. In fact, Plaintiff's own counsel identified *Huerta* as a case "with similar facts to [Plaintiff's] case." *See* Matsuishi Decl., ¶ 3, Ex. A. *Huerta* therefore provides a factually analogous case from which to estimate the amount of non-economic damages in controversy.

Defendants also cite other significant non-economic damages awards in disability discrimination cases. *See Kolas v. Access Bus. Grp. LLC*, 9 Trials Digest 11th 13, 2008 WL 496470 (Cal. Super. Jan. 14, 2008) (awarding $200,000 in non-economic damages where the defendant fired the plaintiff "because of his age and/or because he was injured on the job"); *Izaguirre v. Int'l Coffee & Tea LLC*, 50 Trials Digest 16th 13, 2013 WL 6624243 (Cal. Super. Sept. 26, 2013) (awarding $80,000 in past non-economic damages where the defendant fired the plaintiff after she fractured her wrist); *Ko v. The Square Grp. L.L.C. D/B/A The Square Supermarket*, JVR No. 1503030036, 2014 WL 8108413 (Cal. Super. June 16, 2014) (awarding $125,000 in emotional distress damages where the defendant terminated the plaintiff after she missed work due to a kidney infection); *Hancock v. Time Warner Cable L.L.C.*, JVR

No. 1508120032, 2015 WL 4771468 (Cal. Super. May 22, 2015) (awarding $450,000 for past non-economic losses where the defendant fired the plaintiff after she suffered a job-related injury).

*Kolas*, *Izaguirre*, *Ko*, and *Hancock* are not as factually analogous to Plaintiff's allegations as *Huerta* because they do not involve the defendant providing accommodations and then revoking them. The significant non-economic damages awards in those cases do, however, establish $25,000 as a conservative estimate of non-economic damages in a disability discrimination case like this one. Accordingly, the Court, like in *Kroske* and *Castle*, finds that a non-economic damages award of at least $25,000 could result from a verdict for Plaintiff.

### 4. Punitive Damages

Punitive damages are included in the amount in controversy calculation. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). And, like with non-economic compensatory damages, a removing defendant may analogize to awards in similar cases to establish the amount of punitive damages in controversy. *See Sasso*, 2015 WL 898468, at *6; *Benns v. ITT Educ. Servs., Inc.*, No. 2:16-cv-03298-SVW, 2016 WL 3753476, at *3 (C.D. Cal. July 11, 2016). Such cases should be analogous, but they need not be the same. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (explaining that "[t]he fact that the cited cases involve distinguishable facts is not dispositive" because they "amply demonstrate the potential for large punitive damage awards in employment discrimination cases"); *Castle*, 2017 WL 2111591, at *6 (finding evidence of punitive damages awards in similar cases instructive, even though the facts in those cases were "not identical" to the plaintiff's allegations). When punitive damages clearly will cause the amount in controversy to exceed $75,000, courts often do not assign a particular dollar value to the punitive damages in controversy. *See Castle*, 2017 WL 2111591, at *6 (holding that punitive damages would be sufficient to meet the jurisdictional minimum without identifying a specific estimate); *Benns*, 2016 WL 3753476, at *3 ("[W]hile the Court need not

quantify the exact value of Plaintiff's request for emotional distress and punitive damages, it is more likely than not to be significant if Plaintiff succeeds at trial.").

Given the calculations described above, Defendants only need to establish that Plaintiff's allegations place more than $4,820 of punitive damages in controversy. Defendants cite disability discrimination cases in which juries awarded significantly greater punitive damages. *See Ko*, 2014 WL 8108413 (awarding $500,000 in punitive damages where the defendant terminated the plaintiff after she missed work due to a kidney infection); *Hancock*, 2015 WL 4771468 (awarding over $2 million in punitive damages where the defendant fired the plaintiff after she suffered a job-related injury). Particularly convincing is Defendants' citation to *Huerta*. 2015 WL 5830070. As previously discussed, Plaintiff's allegations mirror the facts of *Huerta*, and the jury awarded $96,626 in punitive damages in that case. Even if Plaintiff's allegations produce a smaller punitive damages award than in *Huerta*, it would more likely than not exceed $4,820.

In sum, Defendants have established by a preponderance of the evidence that the amount in controversy exceeds $75,000. Plaintiff's allegations place into controversy $15,180 of economic damages, $30,000 of attorneys' fees, at least $25,000 of non-economic compensatory damages, and more than $4,820 of punitive damages. As the amount in controversy exceeds $75,000 and the parties are diverse, the Court has subject matter jurisdiction in this case.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion.

**IT IS SO ORDERED.**

Dated: November 20, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE